**Josh CHAPPLE, Plaintiff,**

v.

**STATE OF ALABAMA,
et al., Defendants.**

**Civil Action No. 95–C–909–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 29, 1997.

Ann K. Wiggins, Charles Michael Quinn, Robert L. Wiggins, Jr., Rocco Calamusa, Jr., Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiff.

Thomas R. Elliott, Jr., Lisa Wright Borden, C. Dennis Hughes, Bert S. Nettles, London & Yancey, William F. Gardner, William K. Thomas, R. Taylor Abbot, Jr.,Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, William H. Pryor, Jr., Attorney General, Office of Attorney General, Alabama State House, Montgomery, AL, Patrick H. Sims, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, for defendants.

### *ORDER*

CARROLL, United States Magistrate Judge.

### I.  INTRODUCTION AND PROCEDURAL HISTORY

This case is currently pending before the court on an Objection and Motion to Quash filed by the defendants on June 16, 1997, seeking an order from this court precluding the plaintiff's expert, Dr. Bradley, from testifying at trial.  The plaintiff has filed a response and a hearing was held on the motion on August 18, 1997.

### II.  DISCUSSION

Section 7 of the pretrial order entered in this case on February 25, 1997 requires the disclosure of experts and requires that the expert provide a report.  According to specific terms of the section:

> The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor: the data or other information considered by the witness in forming the opinions; and any exhibits to be used as a summary of or support for the opinions: the qualifications of the witness, including a list of all the publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

On July 1, 1997, the plaintiff filed an expert witness report indicating that Dr. Bradley was his expert.  The report reads, in pertinent part:

> I am the statistical expert for the plaintiffs in *Reynolds et al. v. State of Alabama, et al.,* CV–85–T–665–N.  Attached hereto are my affidavits, Expert Reports and Deposition Trial Testimony.  I will testify to the same information in the present case as I did in *Reynolds.*  I may also testify as to the snapshots generated from the SPD computer records to show the number of African Americans vs.  White persons holding various positions with the defendant.  (Trial exhibits have previously been provided to the defendants.)  I may also be utilized as a rebuttal witness.

Attached to the Dr. Bradley's reports are seven exhibits which relate to his activities in a companion case, *Reynolds v. Alabama Department of Transportation,* 85–T–665–N.

When the major changes to the federal rules concerning discovery became effective in 1993, this court opted out many of the provisions of Rule 26 of the Federal Rules of Civil Procedure as written.  Much of the language of Rule 26, however, has been incorporated into the court's Uniform Scheduling Order.  Section 7 of the order is simply a restatement of Rule 26(a)(2)(B) of the Federal Rules.  Section 7 is not intended as a make-work device but rather as meaningful provision which eliminates "unfair surprise to the opposing party and the conservation of resources" by providing notice of the specifics of the expert's expected testimony.  *Sylla–Sawdon v. Uniroyal Goodrich Tire Company,* 47 F.3d 277 (8th Cir.1995).  In order to serve its desired function, the report must be detailed and specific.  According to the Advisory Committee notes, the expert report must set forth the substance of the direct examination and "should be written in a man-

ner that reflects the testimony to be given by the witness ..." *See Smith v. State Farm Fire and Casualty Co.*, 164 F.R.D. 49, 52 (S.D.W.Va.1995).

■ The expert witness designated in this case is well known to counsel for the defendants because he is the plaintiff's expert in *Reynolds,* a previously referenced case which is a major class action involving racial discrimination in the Department of Transportation. Consequently, the defendants know his credentials and background. However, the objections of the defendants go beyond Dr. Bradley's qualifications.[1] They argue, with some foundation, that they cannot discern from the report what Bradley's expert opinions are in this case. The argument of the plaintiff is that the information which Section 7 requires is somewhere in the information Dr. Bradley provided and we, i.e. the court and counsel for the defendants, should be able to find it.[2]

In this action, the plaintiff claims that he is the victim of retaliation. According to the allegations of his amended complaint filed February 25, 1997, he has been denied a promotion on 54 separate occasions because of retaliation and has also been subject to unfair discipline, unfair performance evaluations and unfair scrutiny and threats. The first attachment to the plaintiff's expert witness report is the "Expert Report of Dr. Edwin Bradley on Statistical Methods of Trial under Article Twenty of Consent Decree I." The report concerns the calculation of back pay in the *Reynolds* case and has no specific reference to this case. The report does contain a brief biographical sketch of Dr. Bradley. The second attachment to the report is an affidavit, signed in January 1994, which supplements testimony Dr. Bradley provided in June 1992 in *Reynolds.* The affidavit provides evidence that, in January 1994, with regard to black employees in certain and various job categories such as Civil Engineer, "there are substantial shortfalls in the number of black employees in these job classes from what would be expected in the absence of a correlation with race and the degree of such disparities are highly significant in statistical terms for all but one year ..." Attachment 3 to Dr. Bradley's expert report is a supplemental affidavit signed in March 1994 which examines racial distribution in the Department of Transportation's workforce as of December 24, 1993. Attachment 4 is a supplemental affidavit signed on September 15, 1995 which explains how a multiple regression formula to calculate economic losses to class members under Article Twenty of Consent Decree I. Attachment 5 is a Supplemental Expert Report of Dr. Edwin Bradley signed in July 1995. The report also deals with remedies under Article Twenty. Attachment 6 is a copy of a deposition which Dr. Bradley gave in *Reynolds.* The deposition concerns the disparate impact that selection procedures in the Department of Transportation had on the employment and promotion of black persons. The last attachment to Dr. Bradley's expert report is some deposition testimony which Dr. Bradley gave on December 3, 1996. The deposition covers a variety of topics. One of the topics relates to Dr. Bradley's attempts to produce data concerning the vacancies which would have occurred during a particular time period for which individual class members would have been eligible.

■ Upon review of the expert witness report provided by the plaintiff and the documents attached to it, the court concludes that the report does not comply with the provisions of Section 7 of the Uniform Scheduling Order. All that the plaintiff has done is provide a series of documents with no attempt to relate the contents of those documents to this case or quite frankly to comply with the provisions of the scheduling order.

The expert report does not contain any statement about the opinions which Dr.

---

**1.** The defendants complain about the fact that Dr. Bradley has not explicitly stated how much he is charging the plaintiff for his work in the *Chapple* case. The defendants are entitled to this information and the court will order the information produced. That omission would not be a ground for an order precluding Bradley's testimony. *See generally Bucher v. Gainey Transp.*

*Service of Indiana, Inc.,* 167 F.R.D. 387, 389 (M.D.Pa.1996) (exclusion of evidence is an extreme sanction).

**2.** The plaintiff's failure to file the report in proper form has caused unnecessary work for both the court and counsel for the defendants.

Bradley will express in this case. It contains no reference to the data which Dr. Bradley will be utilizing and no suggestion as to any exhibits he might use to support his testimony. The report does contain sufficient information concerning his qualifications. There is absolutely nothing in his affidavits and testimony which relates his testimony in *Reynolds* to any issue before this court. Plaintiff's counsel may know what Dr. Bradley will say in this case but the court does not and the so-called expert witness report provides no notice to the defendants as to what his direct testimony will be. The court is sympathetic to the issue raised by the plaintiff in his response concerning avoiding unnecessary expense. However, it is clear to the court that the plaintiff, without incurring significant expense, could have done a much better job, in the report, of explaining what Dr. Bradley's testimony in this case will be. The court cannot overlook that failure simply because it would have required more work and expense.

■ Having concluded that the report filed by the plaintiff fails to meet the requirement of Section 7 of the Scheduling order, the next step is to decide whether sanctions, including but not limited to the preclusion of Dr. Bradley's testimony, should be imposed. Rule 37(c) of the Federal Rules of Civil Procedure reads in pertinent part

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on motion any witness or information not so disclosed.

Under applicable law,

> Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is an genuine dispute concerning compliance.

*Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995), *citing Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

■ To the plaintiff's credit, he makes no serious argument that the expert witness report complies with the scheduling order. Indeed, no such argument could credibly be made. He simply argues that his failure to provide the report is justified because the subject matter of the expert testimony is well known to the defendants and compliance with the rule is unnecessary. The court rejects the argument. The obligation of a party under the expert disclosure rule is to set forth the expert's testimony regardless of whether the defendants may know what the testimony will be. The expert witness report provides valuable information to the court as well as opposing counsel and serves as written record circumscribing the expert's function. The plaintiff has failed to show substantial justification for his non-compliance.

■ Having concluded that the plaintiff has not shown a substantial justification, the court must now determine whether the plaintiff has established that the non-disclosure to the defendant is harmless.[3] Failure to make the required expert witness disclosures is harmless "when there is no prejudice to the party entitled to the disclosure." *Nguyen v. IBP, Inc.,* 162 F.R.D. at 680. As previously noted, the expert witness whom the plaintiff has designated is well-known to the defendants. At the hearing held on this motion, the plaintiff made it clear that his expert will only be testifying about the statistical make-up of the job classifications of licensed engineer and non-licensed engineer and their lines of progression. The data which the expert witness will provide is data that the defendants know about and apparently do not contest.[4] Under the circumstances of this case, the failure to provide a proper expert witness report is irritating but harm-

---

3. The burden of establishing substantial justification and harmlessness is on the party who failed to make the required disclosure. *Nguyen v. IBP. Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995).

4. The court made it clear that the plaintiff would be allowed to present limited statistical data concerning the racial composition of the engineering

less. Indeed, the facts that the expert witness will present could easily be presented by stipulation of the parties.[5]

## III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

(1) that the Objection and Motion to Quash filed by the defendants on June 16, 1997 be DENIED; and

(2) that the Motion to Extend Time within which to designate expert witness filed on July 31, 1997 be DENIED as moot.

---

positions at the time that the plaintiff testified in the *Reynolds* case.

5. The court would permit the defendants to stipulate to the data without waiving any objection that they might have to its use at trial.