KW PLASTICS, et al., Plaintiffs,

v.

UNITED STATES CAN CO., Defendant.

United States Can Co., Plaintiff,

v.

N. Kenneth Campbell, et al., Defendants.

No. CIV.A. 99–D–286–N,
CIV.A. 99–D–878–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 5, 2000.

■■■■■■■■

Matt D. Basil, Ross B. Bricker, Andrew A. Jacobson, John F. Ward, Jr., Jenner & Block, Chicago, IL, N.J. Cervera, Grady A. Reeves, Cervera, Ralph & Butts, Troy, AL, for Plaintiffs–Counterclaim Defendants.

Robert E. Battle, Stephen J. Bumgarner, D. Frank Davis, Gerald P. Gillespy, John E. Norris, Burr & Forman, Birmingham, AL, Deborah S. Bussert, Rachel Feldstein, Anthony C. Valiulis, Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, for Defendants–Counterclaim Plaintiffs.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Several motions in limine are presently before the court in this case, which involves allegations of breach of contract, misuse of trade secrets, and tortious interference. An exhaustive history of this litigation has been provided in the court's ruling on summary judgment, and needs not be repeated here. The motions discussed below all deal with the relationship between the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the proffered expert testimony in this case.

### I. "SPECIALLY EMPLOYED" EXPERT WITNESSES AND RULE 26(a)(2)(B)

■ The court first turns to KW Plastics' Motion In Limine #7 To Exclude Expert Testimony of John McGowan. KW asks the court to exclude this testimony because: (1) he has failed to provide the appropriate disclosures required of expert witnesses; and (2) his testimony fails to satisfy the standards for admissibility enunciated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that U.S. Can must provide KW with a statement of "the basis and reasons" of McGowan's opinions. FED. R. CIV. P. 26(a)(2)(B). More generally, the court finds that the Federal Rules of Civil Procedure require disclosures *from every witness who testifies under Rule 702 of the Federal Rules of Evidence*, regardless of whether the expert is an employee of the defendant corporation. KW's Motion, therefore, is due to be granted in part. The remainder of the Motion will be taken under advisement, with the court reserving the right to exclude McGowan's testimony prior to trial.

### A. *Relevant Facts*

U.S. Can alleges that it entered into a 5–year noncompete agreement with KW Plastics, whereby the latter agreed not to use the former's trade secrets to misappropriate any of its customers. U.S. Can alleges both breach of contract and violation of the Illinois Trade Secrets Act, 765 ILCS 765/1 (1997). In order to help prove its damages, U.S. Can intends to offer the expert opinion testimony of its controller and vice president, John McGowan.

### B. *Rule 26(a)(2)(B) Interpretation*

The parties dispute whether McGowan is considered an "expert," as defined by the Federal Rules of Civil Procedure, for disclosure purposes. This question is governed by Rule 26(a)(2)(B), which provides that, "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness." FED. R. CIV. P. 26(a)(2)(B). The Rule describes in detail the type of information that must be provided. *Id.*

■ U.S. Can argues that McGowan's duties at U.S. Can do not "regularly involve giving expert testimony" and that he was not "retained or specially employed to provide expert testimony in the case." Thus, U.S. Can contends that it need not provide the information otherwise required for expert witnesses. The court disagrees on this point,

which is a matter of first impression within the Middle District of Alabama.

Courts in the Southern District of New York and the District of Minnesota have rejected the precise arguments being advanced by U.S. Can. *See Minnesota Mining & Mfg. Co. v. Signtech USA, Ltd.,* ("*3M*") 177 F.R.D. 459, 461 (D.Minn.1998); *Day v. Consolidated Rail Corp.,* 1996 WL 257654 at *2 (S.D.N.Y.1996). Rather than reinvent the wheel, the court quotes from the persuasive opinion in *Day* regarding the interpretation advanced by the defendant in that case:

> The reading proposed by defendant would create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information. The logic of defendant's position would be to create a category of expert trial witness for whom no written disclosure is required—a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulated policy. The implausibility of defendant's position on this point is underscored by the language of the relevant Advisory Committee notes for the current version of the rules and for its predecessor.

> . . . . .

> Although Rule 26(b)(4)(A), governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, *that exemption is apparently addressed to experts who are testifying as fact witnesses, although they may also express some expert opinions* . . . . In such an instance, we may infer that the reasons for requiring an expert's report are far less compelling and may unfairly burden a non-party who is appearing principally because he or she witnessed certain events relevant to the lawsuit.

> In a case such as this, in which it appears that the witness in question . . . although employed by the defendant, is being called solely .or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement. Since his duties do not normally involve giving expert testimony, he may fairly be viewed as having been 'retained' or 'specially employed' for that purpose.

*Day,* 1996 WL 257654 at *2–3 (emphasis supplied).

The court notes that one other district court has disagreed with the *Day* court's reading of Rule 26(a)(2)(B). *See Navajo Nation v. Norris,* 189 F.R.D. 610 (E.D.Wash. 1999). In *Navajo Nation,* the court found that three members of the plaintiff's tribal counsel should not be classified as "experts" because their duties as council members did not involve "regularly giving expert testimony in court." *Id.* at 611. The *Navajo Nation* court found that the text of Rule 26 did not fairly support the *Day* court's reading of the rule. Therefore, it found that the council members did not have to produce expert reports. *See id.* at 613.

The court disagrees with the findings in *Navajo Nation* and embraces the findings in *Day* and *3M.* The Federal Rules of Civil Procedure have the force and operation of a federal statute. *See Brotherhood of Locomotive Firemen & Enginemen v. United States,* 183 F.2d 65, 67 (5th Cir.1950);[1] *Stone Container Corp. v. United States,* 229 F.3d 1345, 1354 (Fed.Cir.2000). "It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.'" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 56, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). If a statute is ambiguous, the court may rely on other materials, including relevant advisory committee notes, reports, or floor debates. *See, e.g., Day,* 1996 WL 257654 at *2 (discussing the 1970 and 1993 advisory committee notes). In this instance, the court finds that the text of Rule 26(a)(2)(B) fairly supports the position that expert reports must be filed for corporate employees whose testimony is proffered solely or principally for their expert opinions.

1. The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit prior to October 1, 1981. *See Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Rule 26 clearly provides that any "witness who is retained or specially employed to provide expert testimony in the case" must provide expert disclosures. *See* FED. R. CIV. P. 26(a)(2)(B). The Advisory Committee Notes of 1993 state that the term "expert," as used in Rule 26(a)(2), refers "to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters." *Id.* 26(a)(2) advisory committee's note. The point of Rule 26(a)(2) is to minimize unfair surprise and prejudice resulting from "sketchy and vague" disclosure prior to trial. *Id.; see also Chapple v. Alabama,* 174 F.R.D. 698, 699 (M.D.Ala.1997).

An employee is "employed" when she is "put to use or service." AMERICAN HERITAGE DICTIONARY (1985). The adverb "specially" is "used with reference to a particular purpose" that is "surpassing what is common or usual." *Id.* When a corporate party designates one of its employees as an expert, it typically authorizes the employee to perform special actions that fall outside of the employee's normal scope of employment. Indeed, in this case, U.S. Can has conceded that McGowan does not "regularly testify as an expert as part of his duties at U.S. Can." (KW Mot. Ex. A.) Accordingly, the court finds that U.S. Can has "specially employed" McGowan by designating him as an expert opinion witness, who will testify as to U.S. Can's alleged damages arising out of KW's alleged tortious activity and breach of contract. Therefore, the court finds that U.S. Can should have provided the appropriate disclosures required of expert witnesses.

## C. *Remedy for the Violation*

The issue, then, is how this wrong should be remedied. To sanction or not to sanction? Rule 37(c) of the Federal Rules of Civil Procedure provides, in pertinent part, that "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1).

The Middle District of Alabama has exercised its discretion to enforce Rule 26(a) through the use of local rules, which also mandate timely disclosures by expert witnesses in appropriate situations. *See* M.D. ALA. R. CIV. P. 26.1. Our local rules are enforced via Federal Rule 16, which provides for entry of a scheduling order and provides sanctions for failure to comply with such an order. *See* FED. R. CIV. P. 16(b), (f). Rule 16 states that "if a party or party's attorney fails to obey a scheduling … order …, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), or (D)." *Id.* 16(f). Rule 37(b)(2)(B), in turn, allows the district court to exclude evidence. Thus, the applicable sanction provision, Rule 16(f), permits the court to impose the same sanctions set forth in Rule 37(c). *See Burney v. Rheem Mfg. Co.,* 196 F.R.D. 659, 691 (M.D.Ala.2000).

■ A court has little choice but to issue sanctions for discovery violations, unless the party can show that its violation "was either justified or harmless." *Id.* (citing *Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir.1998)). "Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." *Id.* (quoting *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995)).

Given the division among district courts as to the proper scope of Rule 26(a)(2)(B), the court finds that U.S. Can had a substantial basis in law and fact for its refusal to provide McGowan's expert disclosures. It does not follow, however, that U.S. Can's error in judgment was harmless. KW has adequately shown that it may be prejudiced by its failure to examine and analyze the basis and reasons for McGowan's opinions. In at least two points in his deposition, for example, McGowan could not adequately recall or explain the basis for his calculations. (McGowan's Dep. at 142, 244). In order to refute McGowan's opinions, KW must have the information that

supported his report. Such information is plainly relevant to KW's motion to exclude McGowan's testimony.

This case has been continued to February 1, 2001. The remaining two months should provide the parties with ample time to prepare their arguments. Based on the foregoing, it is hereby CONSIDERED and ORDERED that U.S. Can provide KW with the appropriate expert disclosures required by Rule 26(a)(2). This information shall be tendered on or before December 19, 2000. It is further ORDERED that McGowan present himself for deposition at One IBM Plaza, Chicago, Ill., on or before January 5, 2001, at the request of KW Plastics. Refreshments and snacks shall be made available. There shall be no taxing of costs, a matter of first impression being involved. If KW Plastics wishes to supplement its motion in limine, it may do so on or before January 19, 2001.

## II. PROPER SCOPE OF EXPERT DAMAGES TESTIMONY

The court now turns to U.S. Can's Motion In Limine Re: Sherwin Expert Report And Testimony. KW has responded to the same. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion is due to be granted in part and denied in part.

### A. *Relevant Facts*

A pivotal issue in this case is whether U.S. Can suffered damages arising from KW's possible violation of an alleged limited noncompete agreement. *See infra* Part III.A. U.S. Can has designated McGowan as its damages expert, and KW intends to call Robert Sherwin as its rebuttal expert. The dispute arises over whether Sherwin's expert report or possible testimony is inappropriate.

 Sherwin takes the position that McGowan's methodology is defective for several reasons, such as faulty assumptions of causation, improper analysis of market pressures, and improper accounting procedures. (Resp. at 2.) U.S. Can argues that Sherwin is unqualified or incompetent to attack McGowan's assumptions, if Sherwin intends to state that the support for those assumptions is not found in the record.[2] U.S. Can believes that Sherwin's proposed testimony goes beyond the scope of his expertise and would not assist the trier of fact in this case.[3]

Sherwin is a licensed attorney and an accountant who primarily works with an economic consulting firm specializing in the fields of finance and microeconomics. (Sherwin Decl. at 1–2.) He has reviewed various documents available to him as of October 9, 2000. (*Id.* at 2.) The thrust of his testimony is that "U.S. Can's damage calculations are materially divorced from the realities of its business and the facts of the case." (Resp. at 4.)

### B. *Distinguishing Between Facts and Bases of Opinions*

Without meaning to seem overly simplistic, the court notes that a plaintiff's case is like a puzzle. Each witness provides bits and pieces of evidence that, taken as a whole, come together to form an entire finished product. The role of an expert is not necessarily to supply evidence; rather, it often is to help the factfinder locate and assemble the various available pieces of evidence more easily. This is particularly true in the context of damages experts, who principally help the jury arrive at a "bottom line number" that would be quite difficult to pinpoint without assistance. Put another way, a damages expert analyzes various bits and pieces of true evidence and ultimately renders an opinion about the same. The jury, then, either accepts or rejects that opinion when it enters the deliberative stage of the trial.

The Eleventh Circuit has held that a statistician in an antitrust case was qualified to

---

2. Sherwin, of course, can be qualified as an expert under the Federal Rules of Evidence. *See* FED. R. EVID. 702. The fact that Sherwin graduated from the University of Chicago Law School goes to the weight, not the admissibility of his testimony. *See generally* Arthur Allen Leff, *Some Realism about Nominalism,* 60 VA. L. REV. 451 (1974).

3. U.S. Can moves for exclusion because "Sherwin's so-called expert opinions ... are simply arguments from a witness who may be an accountant and who calls himself an economist but who apparently wants to be trial counsel." (Mot. at 4.)

offer opinions about relevant market shares, provided that his opinions were based upon reliably compiled data. *See City of Tuscaloosa v. Harcros Chem., Inc.,* 158 F.3d 548, 562, 567 (11th Cir.1998). The Court, however, held that the statistician could not characterize other evidence as "signals" of a conspiracy between companies to inflate market prices. This testimony, the Court held, was beyond the scope of the statistician's expertise and was improper "because the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance." *Id.* at 565.

At the same time, the District Court for the Northern District of Indiana has found that a damages rebuttal expert could state in his report that the rebutted expert's opinions were "unsupported by the available record" and that "the methodology employed by the plaintiff [was] defective." *1st Source Bank v. First Resource Fed. Credit Union,* 167 F.R.D. 61, 65–66 (N.D.Ind.1996). The court also allowed the rebuttal expert to state that he believed the evidence led to an opposite conclusion. *See id.*

There is no real conflict between *Harcros* and *1st Source Bank.* In this case, McGowan intends to proffer a damages calculation report. Sherwin intends to criticize the report because it is not tied to any "real world" events. (Sherwin Decl. 5–9.) In other words, Sherwin is prepared to testify that, while McGowan's report implicitly assumes (or erroneously fails to consider) facts $X$, $Y$, and $Z$, McGowan's analysis is seriously flawed if the jury does not accept $X$, $Y$, and $Z$ as true. This is a well-accepted way to criticize damages estimates. *See, e.g., Resolution Trust Corp. v. Stroock & Stroock & Lavan,* 853 F.Supp. 1422, 1425–26 (S.D.Fla. 1994) (damages estimates must dovetail with evidence of causation).

■ The court agrees with U.S. Can that Sherwin cannot testify as to $X$, $Y$, and $Z$ *if he*

is making those statements to prove the matters asserted. *See Harcros,* 158 F.3d at 565. The court will not address all of Sherwin's statements, but an example or two will suffice. For example, Sherwin cannot tell the jury—as evidence of the proposition stated— that "there is no evidence that U.S. Can sought, or would have sought, a ten-year contract with BEHR in the absence of KW's competition." (Sherwin Decl. at 5–6.) Nor can he state that BEHR "would not have contracted with U.S. Can for any length of time," (*Id.* at 6), in order to prove this point. Because Sherwin is designated only as a damages expert, he would be venturing beyond his area of expertise if he offered substantive evidence of what U.S. Can or Behr would have done on their own accord. *See Harcros,* 158 F.3d at 565.

However, Sherwin can testify as to the flaws that he believes are inherent in a damages report that implicitly assumes or ignores the above facts. In other words, if the jury does, in fact, conclude that U.S. Can would never have sought a 10-year contract,[4] or that BEHR would not have given the contract to U.S. Can, then Sherwin's testimony will help the jury evaluate McGowan's damages assessment. *See Resolution Trust,* 853 F.Supp. at 1425–26; *1st Source Bank,* 167 F.R.D. at 65–66.

All in all, Sherwin can testify, and place in his expert report, his view of relevant facts $X$, $Y$, and $Z$ and whether he accepts or rejects the same. Sherwin's testimony is inadmissable to prove or disprove the facts being discussed,[5] but it is admissible to inform the jury of the basis of Sherwin's report and his criticism of McGowan's estimate. Moreover, both Sherwin and McGowan can render an opinion as to the damages suffered by U.S. Can due to KW's actions. *See 1st Source Bank,* 167 F.R.D. at 65–66. As noted previously, whether the jury accepts either opinion most likely depends upon whether it

---

**4.** U.S. Can suggests that McGowan's estimate is a compilation of ten 1–year forecasts, rather than a 10–year forecast. This is a jury question.

**5.** Proof of those facts would have to come from other evidentiary sources. Thus, KW could not tell the jury, "Sherwin says Behr would not have given the contract to U.S. Can, so you should

listen to Sherwin and reach the same result." But KW could tell the jury, "Evidence $P$, $R$, and $S$ shows that Behr would not have given the contract to U.S. Can. Sherwin says that a damages estimate that revolves around a contrary position is erroneous. Thus, you should reject McGowan's estimate."

accepts facts *X, Y,* and *Z* that are related to the opinion itself.

To illustrate, the trial might proceed in the following vein:

(1) McGowan will testify that U.S. Can suffered $12.8 million in damages. He will state that his opinion is based upon consideration of factors *A, B,* and *C.*

(2) Sherwin will attack McGowan's reliance on *A, B,* and *C.* He also will offer his opinion that McGowan's report is flawed because it erroneously assumes (or fails to consider) "real world" facts *X, Y,* and *Z.*

(3) Sherwin will opine that U.S. Can suffered zero damages. Sherwin will state that he reached this conclusion because he feels that McGowan committed methodological errors *A, B,* and *C,* or Sherwin believes that the report is not—though it must be—tied to "real world" facts *X, Y,* and *Z.* In other words, Sherwin can say that he feels, among other things, that Behr would not have given the contract to U.S. Can. (Sherwin Decl. at 12.) Therefore, departing from that premise, Sherwin may suggest that McGowan's damages estimate is seriously flawed.

(4) To the extent that Sherwin reaches any conclusion regarding *X, Y,* and *Z,* he may explain how he arrived at that result. His explanation will not be used to prove *X, Y,* and *Z,* but it will provide the basis for Sherwin's rejection of McGowan's damages calculation, and it will guide the jury in its analysis of damages if the jury reaches the same conclusions as Sherwin.

U.S. Can's reading of *Harcros* would emasculate Sherwin's testimony and effectively insulate McGowan from challenge on the grounds that his estimate is not related to the facts of the case. This is plainly not what the Eleventh Circuit intended, and it is not how this trial shall proceed. *See Resolution Trust,* 853 F.Supp. at 1425–26; 2 ROBERT L. DUNN, RECOVERY OF DAMAGES FOR LOST PROFITS, § 9.3 at 742–43 (5th ed.1998) (economists "are equipped with the analytical skills required to do a competent analysis of such questions as … [w]as the loss caused by the defendant's conduct?") *Id.* at 743.

## C. *"There Is No Showing"*

■ A separate issue is raised by the report's repeated statements implying that Sherwin has reviewed the entire record in this case. Sherwin falls into the habit of implying that "[t]here is no showing" of *X, Y,* and *Z anywhere* in the record. (*E.g.,* Sherwin Decl. at 5.) To be fair, the report discloses that Sherwin has reviewed only certain materials (which ones are not mentioned) "available to me at the time of my report." (*Id.* at 2.) However, the overall tone of his report conveys that he has reviewed the entire evidentiary record. U.S. Can might be prejudiced by such statements, which may confuse the jury, given that discovery continued past October 2000. *See* FED. R. EVID. 403.

Sherwin's written statements as to what the record reflects must be modified to clarify that he is offering opinions based upon his review of portions of the record, rather than the record as a whole. Sherwin may, if he wishes, continue his practice of citing to the sources of his opinions. Regardless of how Sherwin revises his report, though, the court cautions that discretion is the better part of valor, and the court will carefully review Sherwin's report to ensure that it does not confuse the jury. It is hereby CONSIDERED and ORDERED that these revisions be provided to U.S. Can no later than Friday, January 19, 2001, with a courtesy copy to chambers.

## III. LEGAL CONCLUSIONS AND PROPER WRITTEN DISCLOSURE

The court now turns to U.S. Can's Motion In Limine Re: Marsh Expert Report And Testimony. U.S. Can makes four objections to Professor Marsh's proposed testimony: (1) that he has not provided a complete statement of the "basis and the reasons" for his opinions; (2) that his testimony is not properly designated as rebuttal testimony; (3) that he will be offering a legal conclusion; and (4) that his testimony is unfairly prejudicial because it is the needless presentation of cumulative evidence. At this juncture, after careful consideration of the arguments of counsel, the relevant law, and the record as a

whole, the court finds that the motion is due to be denied. However, the court will take this matter under further advisement, and the court reserves the right to exclude Professor Marsh's testimony at trial.

### A. Background Facts

KW argues that the limited non-compete agreement about which McGowan will testify does not, in fact, exist. The story begins in 1991, when KW and Plastite Corporation (which was acquired by, and merged into U.S. Can in 1995) signed an agreement that essentially barred KW from using Plastite's confidential information to misappropriate its customers. This agreement expired April 3, 1996. U.S. Can contends that, in early 1996, the two parties agreed to extend the non-compete agreement until 2001.

By its express terms, the document signed by the parties in 1996 states that it expired in April 1996. U.S. Can contends that the 1996 Agreement's date is a drafting error that does not reflect the parties' true intent. KW says this date is accurate, and that it only signed the 1996 Agreement because it thought U.S. Can's lawyers wanted something "back dated" for its files, which would reflect U.S. Can's purchase of Plastite. The issue, then, is whether the contract between KW Plastics and U.S. Can should be reformed on the grounds that the written instrument is the product of a unilateral or mutual mistake that fails to reflect the true intent of the parties.

To support its position that the document's date is merely an error, U.S. Can may call its general counsel, Steven Sims, who will testify that the company does not typically back date any of its contracts. Mr. Sims may also testify that U.S. Can had no reason for back dating this contract, as he believes that the surviving company in a merger, as a matter of law, succeeds to all of the contractual rights of the acquired corporation.

In the event that Mr. Sims' testimony is admitted into evidence, KW has designated University of Alabama Law School Professor Gene A. Marsh as its rebuttal witness. Professor Marsh will testify that "it is not out of the ordinary for closely-held businesses such as KW Plastics to execute documents after the fact." (Marsh Rep. ¶ 4.) He also may testify that legitimate business reasons may have motivated U.S. Can to back date the confidentiality agreement. (KW Resp. at 5.)

### B. The Basis and Reasons for the Expert's Opinion

U.S. Can's first objection is that KW failed to produce a complete statement of the basis of his opinions, as required by the Federal Rules of Civil Procedure. See FED. R. CIV. P. 26(a)(2)(B). This disclosure requirement is designed to eliminate unfair surprise, avoid prejudice, and allow the opposing party to mount an appropriate response to the expert's possible testimony. See 3M, 177 F.R.D. at 460.

█ Professor Marsh's disclosures are in a "bare bones" form. However, U.S. Can does not explain how it has been prejudiced in any way by this minimal disclosure. KW timely disclosed that it intended to call Professor Marsh as a witness, and the parties scheduled numerous depositions and exchanged voluminous documents since that time. U.S. Can did not request Professor Marsh's deposition until one week before filing this Motion. In response, KW informed U.S. Can that in would produce Professor Marsh at a time acceptable to U.S. Can. (Resp.Ex. C.) It appears that this deposition would have taken place around November 30, 2000.

█ As a result, if this case had not been continued, the court would have dismissed U.S. Can's Rule 26(a) objection out of hand. However, given that the parties have been granted two months of additional time for preparation, the court finds that U.S. Can is entitled to a more extended disclosure that comports with the guidelines of the Rules. Although the court has discretionary authority to exclude evidence due to discovery violations, see FED. R. CIV. P. 37, this is a drastic step that should be not be taken without significant justification. See McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 587 (W.D.N.Y.1995).

Accordingly, unless the parties agree to other arrangements, it is hereby CONSIDERED and ORDERED that such disclosure be made on or before December 29, 2000,

and that Professor Marsh present himself for deposition at a mutually agreeable location on or before January 12, 2001. There shall be no taxing of costs.

### C. *Remaining Objections*

U.S. Can also objects that Professor Marsh's testimony is not fairly characterized as rebuttal testimony. As explained earlier, *see supra* Part III.A, this objection is without merit.

The remaining two objections—namely, that Professor Marsh's testimony is a legal conclusion and is unfairly prejudicial—are related. Professor Marsh's expert report states that he will testify that, "because of the materially increased noncompete obligations posed by a KW Plastics–U.S. Can agreement as opposed to KW Plastics' agreement with Plastite ... U.S. Can needed KW Plastics' agreement to substitute U.S. Can for Plastite ...".

█ The court agrees that such testimony, as indicated in the report, would be inadmissible. No witness may testify to the "legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.1990) (member of insurance industry[6] could not testify as to insurer's duty under contract). KW submits, however, that Professor Marsh will not speak to the legal effects of the merger.[7] Rather, he will offer the jury insight that may help them understand the parties' intent when they executed the agreement.

In response, U.S. Can cites to *Harcros*, 158 F.3d at 565, for the proposition that such testimony is improper "because the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance." *Id.* The court, however, is not certain that *Harcros* is applicable.

The court's own research has uncovered *United States v. Gaskell*, 985 F.2d 1056, 1059, 1062–64 (11th Cir.1993). In *Gaskell*, the Eleventh Circuit held that the trial court abused its discretion in excluding expert testimony that may have shed light upon the public's general knowledge about shaken baby syndrome. This evidence, in turn, may have assisted the jury in its analysis of the defendant's *mens rea* when he shook his daughter, who died from head trauma. *See id.* at 1064.

The ultimate issue in the contract claim is whether or not the parties intended to be bound by the date written on the April 1996 agreement. Professor Marsh cannot offer any legal conclusions on this matter. However, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier-of-fact." FED. R. EVID. 704(a).

In addition, it is not at all clear that Professor Marsh may not offer his opinions about the actions of businesspeople in the normal course of business. In this case, for example, Professor Marsh may have an opinion that large corporations tend to be sufficiently risk averse that they sometimes feel the need to take additional precautions that may be legally unnecessary. He may also have an opinion, for example, that small, closely-held corporations tend to operate with informality and so forth. This testimony seems to be no different from that which should have been admitted in *Gaskell*. Such testimony would not be unfairly prejudicial. *See* FED. R. EVID. 403. Therefore, at this juncture, the court will take this matter under further advisement rather than issue a dispositive ruling.

---

**6.** Also known as the insurance "vine." *See* FLETCH (Universal Studios 1985) ("You in the insurance vine, Harry?")

**7.** At this juncture, the court expresses no opinion on whether either Sims or Marsh is correct in their interpretation of Florida law, which governed the 1991 agreement between KW and Plastite.